UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BERNARD GOINES, JR.,

                      Petitioner,

v.

DEWAYNE BURTON,

                      Respondent.

_____/

Case No. 1:15-cv-354

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner challenges his July 18, 2012, Berrien County Circuit Court jury convictions on two counts of assault with a dangerous weapon (ADW), MICH. COMP. L. § 750.82, and one count of felony firearm, MICH. COMP. L. § 750.82.[1] Petitioner Bernard Goines Jr. is presently on parole. At the time he filed his petition, however, he was incarcerated with the Michigan Department of Corrections at the Richard A. Handlon Correctional Facility in Ionia, Michigan. Petitioner was

---

[1] Petitioner was also convicted of two misdemeanor counts of malicious destruction of property, MICH. COMP. L. § 750.380(5). The trial court sentenced Petitioner to 93 days on each count to be served concurrently with the sentences on the assault with a dangerous weapon counts. (Sentencing Tr., ECF No. 7-6, PageID.522.) Because Petitioner was given credit for 112 days of jail time against the four concurrent sentences, he had already served his sentence before he entered the custody of the Michigan Department of Corrections. (*Id.*) At the time Petitioner filed his petition, therefore, he had already served the entire term of the consecutive sentence on the felony firearm count as well as the concurrent sentences on the misdemeanor counts. That does not preclude Petitioner from challenging the consecutive felony firearm conviction and sentence, *Garlotte v. Fordice*, 515 U.S. 39, 47 (1995), but it does preclude Petitioner from challenging the concurrent misdemeanor convictions and sentences, *Bowling v. White*, No. 15-6318, 2017WL2471262 at *6, n.5 (6th Cir. June 8, 2017).

sentenced to concurrent sentences of 30 months to 180 months on each of the ADW counts, consecutive to a sentence of 24 months on the felony firearm count. The Berrien County Circuit Court sentenced Petitioner as a habitual offender-fourth offense, MICH. COMP. L. § 769.12. In his *pro se* petition, Petitioner raises five grounds for relief:

I.    THE TRIAL COURT ERRED IN GRANTING THE PROSECUTION[']S MOTION TO ALLOW THE EVIDENCE OF A STRAY BULLET RECOVERED FROM THE COMPLAINANT[']S HOME BASED ON INFERENCES THAT IT WAS TIED TO [PETITIONER], WHICH DENIED [PETITIONER'S] DUE PROCESS [RIGHTS] AND [HIS RIGHT TO] A FAIR TRIAL BEFORE AN IMPARTIAL JURY, WHICH VIOLATES THE VI AND XIV AMENDMENTS OF THE US CONSTITUTION.

II.   THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTION AND SENTENCE OF [PETITIONER], IN VIOLATION OF THE US CONSTITUTION VI, XIV AMENDMENTS AND THE LEGAL PRINCIPLE OF THE SUPREME COURT IN *JACKSON V. VIRGINIA*, 443 US 307; 99 S CT 2781 (1979) ET AL, IN REGARDS TO THE ASSAULT WITH A DANGEROUS WEAPON AGAINST TRACY ROSS (COUNT I).

III.  [PETITIONER] WAS DEPRIVED [OF] DUE PROCESS OF LAW, THE RIGHT TO CONFRONTATION, IN VIOLATION OF THE US CONSTITUTION VI, XIV AMENDMENTS AND THE LEGAL PRINCIPLE OF THE US SUPREME COURT IN *MELENDEZ DIAS V. MASSACHUSETTS*, 557 US __; 129 S CT 2527 (2009); *CRAWFORD V. WASHINGTON*, 541 US 36, 124 S CT 1354 (2004) WHEN BENTON HARBOR POLICE OFFICER ALTHOUSE WAS ALLOWED TO INTERPRET A CRIME LAB REPORT BY MICHIGAN STATE POLICE ANALYST MICHAEL BURRITT, AND WHEN BENTON HARBOR POLICE OFFICER ALSUP WAS ALLOWED TO INTERPRET THE LABORATORY RESULTS OF THE NON-PROBATIVE BUT INFERENTIALLY

PREJUDICIAL 19 PACKS OF [COCAINE] FOUND ON THE A[D]JACENT PROPERTY.

IV. THE PRACTICES AND PROCEDURES OF THE SECOND CIRCUIT COURT OF BERRIEN COUNTY, WHERE EACH CIRCUIT COURT JUDGE SIMULTANEOUSLY FUNCTIONS AS A JUDGE OR MAGISTRATE OF THE 5TH DISTRICT COURT (IN VIOLATION OF THE CLEAR LANGUAGE OF CONST. 1963, ARTICLE 6 §§21, 23, 24) WHEN THE POLITICAL, JUDICIAL AND LEGISLATIVE LINES OF DISTINCTION BETWEEN A MICHIGAN DISTRICT COURT JUDGE/MAGISTRATE AND MICHIGAN CIRCUIT COURT JUDGE ARE CLEARLY DELINEATED AND PLAIN PURSUANT TO [STATE STATUTES AND THE STATE CONSTITUTION], WAS SO UNCONSTITUTIONAL THAT THE COLLECTIVE FAILURES OF THE MICHIGAN SUPREME COURT AND THE GOVERNOR OF MICHIGAN TO FILL THE FIVE (5) DISTRICT COURT JUDGE VACANCIES OR ACKNOWLEDGE THE DISTINCTIONS INHERENTLY CREATES A STRUCTURAL DEFECT SO PRESUMPTIVELY PREJUDICIAL THAT ANY DEFENDANT (LIKE [PETITIONER]) SUBJECTED TO THE PROHIBITED PRACTICE OF THE SECOND CIRCUIT OF BERRIEN COUNTY IS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BEFORE AN IMPARTIAL JUDGE AND JURY, IN VIOLATION OF THE VI, XIV AMENDMENTS DUE PROCESS AND THE LEGAL PRINCIPLE OF THE UNITED STATES SUPREME COURT IN *IN RE MURCHISON*, 349 US 133, 75 S CT 623 (1975).

V. [PETITIONER] WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF THE US CONSTITUTION VI, XIV AMENDMENTS AND LEGAL PRINCIPLE OF THE US SUPREME COURT IN *STRICKLAND [V.] WASHINGTON*, 466 US 668; 104 S CT 2052 (1984), DUE TO [THE] INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL'S CUMULATIVE ACTS OF INCOMPETENCE ALPHABETIZED a. – j. WERE PREJUDICIAL TO THE DEFENSE OF [PETITIONER].

(Pet., ECF No.1, PageID.19-22.)  Respondent has filed an answer to the petition (ECF No. 6) stating that Petitioner's challenges should be denied because, with respect to claims I, III, and IV, they have been procedurally defaulted and, with respect to all claims, they lack merit.  Upon review and applying the AEDPA standards, I find that Petitioner's habeas challenges lack merit.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.  Factual allegations

On March 15, 2012, Mr. Jessie Morgan visited his friend, Ms. Tracy Ross, at her home in Benton Harbor, Michigan.  (Trial Tr. I, ECF No. 7-4, PageID.282-285, 352-353.)  At some time after 10:00 p.m., their visit was interrupted by a knock at the door.  (*Id.*, PageID.286-288, 354-356.)  At Ms. Ross' request, Mr. Morgan answered the door.  (*Id.*)  He encountered Petitioner.  (*Id.*)  Petitioner asked to speak to Ms. Ross.  (*Id.*)

Ms. Ross went out onto the porch and Mr. Morgan remained in the house.  (*Id.*, PageID.289, 358.)  Petitioner yelled at Ms. Ross and struck her in the face.  (*Id.*, PageID.294-296, 359-360.)  That brought Mr. Morgan through the doorway and on to the porch just as Ms. Ross headed back inside.  (*Id.*, PageID.296-299, 301, 359-360, 365.)  Mr. Morgan testified that Petitioner pulled a handgun and pointed it at Morgan

and Ross, both of whom retreated back into the house.[2]  (*Id.*, PageID.362-365.)
Petitioner then left.  (*Id.*)

Later that night, bricks were thrown through Ms. Ross' living room and
kitchen windows.  (*Id.*, PageID.308-312, She received texts from Petitioner
threatening to break windows in Ms. Ross' vehicle and home and threatening to shoot
up the place.  (*Id.*, PageID.316 -319, 385-386; Trial Tr. II, ECF No. 7-5, PageID.411-
412.)

The next night, another window was broken.  (Trial Tr. I, ECF No. 7-4,
PageID.321-322.)  Petitioner called Ms. Ross and apologized.  (*Id.*, PageID.323, 325-
326.)  She hung up on him.  (*Id.*, PageID.326.)  A couple of minutes later, she heard a
gunshot.  (*Id.*, PageID.322, 326-327.)  Family members found a bullet hole in the
home and found the bullet in a second-floor bedroom.  (*Id.*, PageID.323-325.)  Ms.
Ross confronted Petitioner about the incident by telephone.  (*Id.*, PageID.333; Trial
Tr. II, ECF No. 7-5, PageID.413)  He laughed and inquired whether she "got a
fingerprint of the bullet."  (*Id.*)  When police investigated the shooting, they found
several baggies of crack cocaine in a neighboring yard behind Ms. Ross' home, in a
spot from which the bullet was likely fired.  (Trial Tr. II, ECF No. 7-5, PageID.435.)

The prosecution elicited testimony from Ms. Ross, Mr. Morgan, and three
police officers who participated in the response to Ms. Ross' calls and investigation of

---

[2] Ms. Ross testified that she never saw a gun in Petitioner's hands.  (Id., PageID.299-300.)  Her
statements to the police, however, indicated that Petitioner had pointed a gun at her.  (Id.,
PageID.302, 367, 376.)

her claims. Petitioner did not testify, nor did he put on any witnesses. The jury deliberated for about an hour before returning the verdict of guilty on all charges.

Petitioner, with the assistance of counsel, initially raised three issues on direct appeal to the Michigan Court of Appeals, including habeas issue I. (Appellant's Br. on Appeal, ECF No. 7-8, PageID.580-581.) Petitioner also filed a Standard 4 brief[3] raising eleven additional issues, including habeas issues II-V. (Appellant's Standard 4 Br., ECF No. 7-8, PageID.632-633.) In an unpublished opinion entered June 24, 2014, the Michigan Court of Appeals rejected each of the issues raised by Petitioner. (Mich. Ct. App. Op., ECF No. 7-8, PageID.536-546.)

Petitioner then sought leave to appeal in the Michigan Supreme Court, raising the same issues he raised in the court of appeals, including habeas issues I-V. That court denied leave by order entered March 3, 2015. (Mich. Ord., ECF No. 7-12, PageID.734.) Petitioner did not file a petition for certiorari in the United States

---

[3] Michigan Supreme Court Administrative Order 2004-6 sets forth minimum standards for indigent criminal appellate defense services, including the following:

**Standard 4**
When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims *in propria persona*. Defendant's filing shall consist of one brief filed with or without an appropriate accompanying motion. Counsel shall also provide such procedural advice and clerical assistance as may be required to conform the defendant's filing for acceptability to the court. The defendant's filing *in propria persona* must be received by the Court of Appeals within 84 days after the appellant's brief is filed by the attorney. . . .

Mich. Admin. Order No. 2004-6.

Supreme Court.  (Pet., ECF No. 1, PageID.3.)  Instead, on March 30, 2015, he filed the instant petition in this Court.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*,

529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.   Admission of the stray bullet

Petitioner first challenges the trial court's admission of the stray bullet found in Ms. Ross' home. The discharge of the firearm that yielded the bullet was not part of any of the charged crimes. The prosecutor sought admission of the bullet because it provided support for the prosecution's contention that Petitioner actually possessed a handgun like the one described by Mr. Morgan during his testimony regarding the assault.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n

conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard. Indeed, the Michigan Court of Appeals' resolution of the issue reveals it is nothing more than a garden-variety relevance issue:

> Defendant's argument on appeal is, essentially, that there was insufficient evidence tying the bullet to him. We disagree. Ross testified that she received text messages from defendant stating that "[h]e was gonna shoot that b-tch up, he didn't care who was in the house," and that Ross was "not gonna have . . . no room or car windows." Ross testified that the shooting occurred within minutes after she had hung

10

> up on defendant during a telephone conversation. A police officer
> summoned after the shooting listened to a telephone conversation
> between Ross and defendant. During the call, Ross told defendant that
> she was angry with him for shooting into her house. The police officer
> testified that defendant replied, "You got fingerprints on that bullet?"
> and started laughing. Contrary to defendant's argument, the evidence
> was sufficient to show a link between him and the bullet.

(Mich. Ct. App. Op., ECF No. 7-8, PageID.537.) At best, Petitioner might claim that

the stray bullet represents a type of "propensity" evidence intended to suggest that

his use of a gun on March 16, 2012, demonstrates his propensity to commit the gun

crime with which he was charged. Even that does not rise to the level of a

constitutional violation cognizable on habeas review.

There is no clearly established Supreme Court precedent that holds that a

state court violates the Due Process Clause by permitting propensity evidence in the

form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined

to hold that the admission of prior acts evidence violated due process. *Estelle*, 502

U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it

expressed no opinion as to whether a state law would violate due process if it

permitted the use of prior crimes evidence to show propensity to commit a charged

crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts

testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United

States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has

not explicitly addressed the issue in constitutional terms. The Sixth Circuit has

found that "[t]here is no clearly established Supreme Court precedent which holds

11

that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Because there was no constitutional violation in the admission of evidence (bad acts), the state court decision was "far from" an unreasonable determination of the facts in light of the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

IV.　　Sufficiency of the evidence with respect to the assault against Ms. Ross

Petitioner next contends that the prosecutor failed to present sufficient evidence to support the jury's verdict with respect to the charge of assault of Ms. Ross with a dangerous weapon. Petitioner argues that Ms. Ross' trial testimony that she did not see a gun precludes the jury's verdict.

A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most

favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals rejected Petitioner's argument:

> Defendant contends that the prosecutor presented insufficient evidence to prove that defendant committed felonious assault against Ross because her testimony did not establish that defendant pointed a gun at her.

> We review claims of insufficient evidence de novo. In doing so, we must view all the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crimes were proven beyond a reasonable doubt. The credibility of witnesses and the

13

> weight accorded to evidence are questions for the jury, and any
> conflict in the evidence must be resolved in the prosecutor's
> favor. Circumstantial evidence and reasonable inferences
> arising therefrom may be sufficient to prove all the elements of
> an offense beyond a reasonable doubt. [*People v. Harrison*, 283
> Mich.App 374, 377; 768 NW2d 98 (2009) (citations omitted).]

> Felonious assault requires "either an intent to injure or an intent
> to put the victim in reasonable fear or apprehension of an immediate
> battery." *People v. Rivera*, 120 Mich.App 50, 53; 327 NW2d 386 (1982).
> It also requires the use of a dangerous weapon. MCL 750.82

> At trial, Ross stated that she did not see anything in defendant's
> hand during the incident. However, a police officer testified, without
> objection, that Ross had told him that defendant pointed a gun at her.
> In addition, Jessie Morgan testified that during the incident, defendant
> "pull[ed] out a gun" and "aim[ed] [it] straight towards us, me and
> [Ross]." Given that credibility determinations are left to the jury, we find
> no basis for reversal.

(Mich. Ct. App. Op., ECF No. 7-8, PageID.539-540.) Although the court of appeals

did not cite federal cases, it is apparent that the court applied the applicable federal

constitutional standard in denying Petitioner's claim. The recited standard parallels

the *Jackson* standard.

Not only did the state court apply the correct standard, it applied it reasonably.

Relying on the testimony of Mr. Morgan, the court of appeals concluded there was

sufficient evidence to establish that Petitioner assaulted Ms. Ross with a dangerous

weapon. The court of appeals' factual findings in support of its conclusion are

reasonable on the record.

Petitioner invites the Court to turn the *Jackson* standard on its head by

pointing to the evidence that supports a finding that he did not assault Ms. Ross with

a dangerous weapon. *York v. Tate*, 858 F.2d 322, 330 (6th Cir. 1988) ("[T]he district court turned the *Jackson* standard on its head . . . [r]ather than asking whether *any* reasonable juror could have found petitioner guilty, the district court considered whether any reasonable juror could have found the petitioner *not* guilty."). The quantum of evidence that supports Petitioner's position on the issue is not material. The only question is whether the evidence, viewed in a light most favorable to the prosecution, would support finding intent to kill beyond a reasonable doubt. The Michigan courts' conclusions that there was sufficient evidence of intent is consistent with *Jackson* and well supported by the record.

V.    Testimony based on lab reports by persons other than the authors

The prosecutor introduced two lab reports without objection by Petitioner:

1.    Exhibit 6, a report from the Michigan State Police Crime Lab, authored by Michael Burritt, regarding the stray bullet; and

2.    Exhibit 17, a supplemental lab report regarding the baggie of crack cocaine found in the yard of the house behind Ms. Ross' house.

(Trial Tr. II, ECF No. 7-5, PageID.415-416, 443-444.)

Exhibit 6 was identified by Benton Harbor Police Officer William Althouse. Officer Althouse provided testimony regarding the content of the report. Specifically, Officer Althouse testified that the report indicated: the caliber of the bullet was .32; the bullet had been so damaged that a suspect firearm could not be identified; the bullet was suitable for comparison purposes if a suspect firearm were submitted for examination; and the bullet had been fired. (Trial Tr. II, ECF No. 7-5, PageID.415-

416.)  Prior to the identification and admission of Exhibit 6, Officer Althouse had already testified that the bullet was .32 caliber (*Id.*, PageID.406-407) and Ms. Ross had already testified that she had heard a gunshot and found the bullet holes in her house (Trial Tr. I, ECF No. 7-4, PageID.323-330).

Exhibit 17 was identified by Benton Harbor Public Service Officer Preston Alsup.  Officer Alsup testified that Exhibit 17 identifies a substance found in a baggie in the backyard of the home behind Ms. Ross' home as cocaine and that the baggie did not have any latent fingerprints that would be useful for identification.  (Trial Tr. II, ECF No. 7-5, PageID.443-444.)  It is important to note that the prosecutor did not question Officer Alsup regarding the baggie of crack cocaine.  Petitioner's counsel raised the issue.  Moreover, before Officer Alsup identified Exhibit 17 and before it was admitted, Officer Alsup had already testified that he found a baggie containing 19 individually wrapped rocks of crack cocaine in the backyard of the home behind Ms. Ross' home, in the area where the officer expected the gunshot had originated. (*Id.*, PageID.435, 438-442.)

Petitioner contends he was denied his right to confrontation because the respective authors of Exhibits 6 and 17 never testified.     The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him."  U.S. Const., Am. VI; *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965) (applying the guarantee to the states through the Fourteenth Amendment).  "The central concern of the Confrontation Clause is to ensure the reliability of the

16

evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-311 (2009), the Supreme Court held for the first time that the affidavits of forensic analysts are testimonial statements that are covered by the Confrontation Clause and subject to analysis under *Crawford*. *Id.*; *see also Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2713-14 (2011). *Melendez-Diaz* involved lab reports regarding analysis of suspected cocaine; so it would appear that Exhibit 17 is type of testimonial statement that might run afoul of the Confrontation Clause. Other courts have indicated that ballistics reports are also likely testimonial statements. *See Ayala v. Saba*, 940 F. Supp. 2d 18, 21 (D. Mass. 2013); *David v. Brown*, No. 10 Civ. 05541, 2014 WL 64375 (S.D. N.Y. Jan. 7, 2014).

Even if out-of-court testimonial statements were admitted in violation of the Confrontation Clause. Petitioner may not be entitled to habeas relief. The Sixth Circuit has held that admission of evidence in violation of the Confrontation Clause is not a structural error. *United States v. Graham*, 278 F. App'x 538, 545 n.2 (6th Cir. 2008). Harmless error review would apply. *Delaware v. Van Arsdall*, 475 U.S.

673, 684 (1986). Under the prevailing harmless error standard, the court must determine whether the Confrontation Clause violations had a "substantial and injurious effect or influence" in determining the jury's verdict. *See Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993). That determination "depends on numerous factors, including 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015) (quoting *Van Arsdall*, 475 U.S. at 684). Where the prosecution's case is strong and the violative evidence plays a relatively small role in the conviction, the error is harmless. *Holland*, 800 F.3d at 243.

The Michigan Court of Appeals concluded that the admission of the exhibits, even if it violated Petitioner's right of confrontation, was harmless:

> Defendant argues that his constitutional right of confrontation was violated because Benton Harbor police officer William Althouse "interpreted the crime laboratory report prepared by Michigan State Police analyst Michael Burritt concerning a .32 caliber slug that the prosecution claimed [defendant] fired into Ross' house." Defendant claims that Burritt himself was required to testify. We review this unpreserved issue under the plain-error standard. *Carines*, 460 Mich. at 763–764. No plain error requiring reversal is apparent. Althouse testified that the report stated that the item was a .32 caliber bullet and that the "suspect firearm cannot be suggested" "[d]ue to the damage." However, Althouse had already stated that a .32 caliber bullet had been found. Even if any error occurred with regard to the introduction of the report, it did not affect the outcome of the proceedings. *Id*. at 763. Defendant makes a similar argument with regard to Benton Harbor

18

> Public Service Officer Preston Alsup, who testified about a laboratory report relating to the 19 packages of cocaine. Alsup testified that the laboratory report identified the substance as cocaine and that no fingerprints were recovered from it. Alsup had already testified about finding 19 individually wrapped rocks of suspected cocaine; even assuming that an error occurred with regard to his testimony about the report, we cannot see how it affected the outcome of the proceedings. *Id.*

(Mich. Ct. App. Op., ECF No. 7-8, PageID.542.) The state court's determinations are neither contrary to, nor inconsistent with, clearly established federal law.

Moreover, the state court's factual determinations regarding the import of the exhibits are reasonable on this record. The stray bullet and cocaine were peripheral issues. Evidence regarding the bullet and the cocaine revealed by the lab reports did not bear directly on the crimes charged in any way. The testimony of Mr. Morgan and Ms. Ross regarding the assaults and the testimony of Ms. Ross and the investigating officers regarding the damage to Ms. Ross' home was essentially uncontroverted. Any violation of the Confrontation Clause occasioned by the admission of exhibits 6 and 17 was harmless error.

VI. <u>The practices and procedures of the Second Circuit Court</u>

"Due process requires a fair trial before a judge without actual bias against the defendant or an interest in the outcome of his particular case." *United States v. Armstrong*, 517 U.S. 456, 468 (1996); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)). However, because of the difficulty in determining "whether a judge harbors an actual,

subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009). The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases: (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1997) (subsequently expanded to include even indirect pecuniary interest, *see Railey v. Webb*, 540 F.3d 393, 399-400 (6th Cir. 2008); (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," *Murchison*, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905 (citing *Withrow v. Larkin*, 421 U.S. 35, 53 (1975).

Petitioner does not allege any of the objective indicia of constitutionally impermissible bias. Instead, he relies upon the procedural oddity that, in the Berrien County Circuit Court, judges also function as district court judges who preside over arraignment and preliminary examination proceedings. Petitioner contends that because his trial judge presided over the arraignment and preliminary examination, the judge "prejudged" the case and was biased against Petitioner. (Appellant's

Standard 4 Br., ECF No. 7-9, PageID.655.)  Petitioner then identifies a number of state statutes and constitutional provisions that he believes are violated by the practice of the Berrien County Circuit Court.  When it comes to identifying evidence of the bias, however, Petitioner offers nothing more than the Berrien County practice and then the rulings of the trial court.

In *Liteky v. United States*, 510 U.S. 540 (1994),[4] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  *See United States v. Grinnell Corp.*, 384 U.S., at 583, 86 S.Ct., at 1710.  In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.  An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), a World War I espionage case against German–American defendants: "One must have a very judicial mind, indeed, not [to be]

---

[4] *Liteky* is a case that addresses the statutory recusal standard for federal judges.  The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause.  *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

prejudiced against the German Americans" because their "hearts are reeking with disloyalty." *Id.*, at 28 (internal quotation marks omitted). Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune.

*Liteky*, 510 U.S. at 555-556.

The Michigan Court of Appeals flatly rejected Petitioner's bias argument:

> [Defendant] contends that reversal is required because the same judge, acting as a district court judge, presided over his arraignment and preliminary examination and then also presided over his trial as a circuit court judge. We review this unpreserved issue for plain error affecting substantial rights. *Carines*, 460 Mich. at 763–764. As noted in *Carines, id.* at 763, reversal under the plain-error rule requires a showing of prejudice.[1] *See also People v. Huston*, 179 Mich.App 753, 756; 446 NW2d 543 (1989) ("as a general rule, a trial judge is not disqualified absent a showing of actual bias or prejudice").[2] Defendant has set forth no case law indicating that presiding over an arraignment or preliminary examination precludes a judge from also presiding over a subsequent trial. Moreover, defendant has set forth no evidence of actual bias and argues merely that the court ruled against him in several respects. "Disqualification on the basis of bias or prejudice cannot be established merely by repeated rulings against a litigant, even if the rulings are erroneous." *In re MKK,* 286 Mich.App 546, 566; 781 NW2d 132 (2009).

> [1] We reject defendant's assertion of a "structural error" having occurred in this case.

> [2] *Huston, id.* at 756–757, also indicates that a showing of actual prejudice is not required if the judge might have prejudged the case because of earlier involvement. Defendant provides no case law indicating that presiding over an arraignment or preliminary examination involves such "prejudging."

(Mich. Ct. App. Op., ECF No. 7-8, PageID.538-539.) The state court's analysis is neither contrary to nor inconsistent with *Liteky*, the clearly established federal law with respect to judicial bias claims.

22

To the extent Petitioner intended to rely not on bias, but on violations of state statutes and state constitutional provisions, his challenge is not cognizable on habeas review. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68. The issue is simply not cognizable on habeas review.

Even if the issue were cognizable, Petitioner would not be entitled to relief. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). Thus, the state courts' rejection of Petitioner's state law arguments is axiomatically correct.

VII.   Ineffective assistance of trial counsel

Petitioner identifies ten instances where his counsel rendered constitutionally ineffective assistance.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDP. . . .") (citing *Harrington*, 562 U.S. at 102).

I will review each of Petitioner's alleged instances of ineffective assistance against that standard.

> A. Counsel allowed Petitioner to be convicted and sentenced by a trial court acting without jurisdiction to try the two malicious destruction of property under $200.00 offenses.

Petitioner contends that his counsel was ineffective for failing to challenge the circuit court's jurisdiction with respect to the malicious destruction misdemeanors. The court of appeals rejected the premise of Petitioner's argument: "This argument is untenable because the circuit court was allowed to hear the charges . . . [c]ounsel

is not required to raise futile objections." (Mich. Ct. App. Op., ECF No. 7-8, PageID.544.)

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976). It is well-settled that a purported violation of state law does not provide a basis for federal habeas relief. *See Estelle*, 502 U.S. at 67-68. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* Here, the state court determined that there were no jurisdictional defects. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright*, 464 U.S. at 84. The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76). Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

The circuit court had jurisdiction to consider the misdemeanor charges against Petitioner. Any objection by counsel would have been meritless. It is not ineffective

assistance for counsel to fail to raise a meritless argument. The state court's resolution of Petitioner's claim is consistent with clearly established federal law.

B. Counsel failed to object to the improper swearing in of the jurors and witnesses or move for a mistrial.

Petitioner contends that it was improper under state law for the court reporter, rather than the court clerk, to swear in the jurors and the witnesses. The court of appeals rejected the premise of Petitioner's argument: "the court reporter was essentially acting as a stand-in 'clerk' for purposes of [the court rule.]" (Mich. Ct. App., ECF No. 7-8, PageID.) As there was no error under state law, it would have been futile for counsel to have raised the objection. It is not ineffective assistance for counsel to fail to raise a meritless argument. The state court's resolution of Petitioner's claim is consistent with clearly established federal law.

C. Counsel failed to object to instances of prosecutorial misconduct.

Petitioner identifies 7 instances of prosecutorial misconduct:

1. The prosecutor proceeded against Petitioner on misdemeanor counts where the court had no jurisdiction.

2. The prosecutor injected "a bevy of bad man character . . . evidence."

3. The prosecutor improperly vouched for the credibility of Mr. Morgan.

4. The prosecutor violated the hearsay rule by referring to hearsay evidence during closing argument.

5. The prosecutor improperly opined that Ms. Ross' denial of seeing a gun in Petitioner's hand was a lie.

6. The prosecutor misrepresented evidence (arguing that Petitioner's texts regarding the breaking of windows constituted admissions of the   misdemeanor offenses).

7. The prosecutor relied on a dissimilar act of malicious destruction by Petitioner to prove that Petitioner committed the charged acts of malicious destruction.

(Appellant's Standard 4 Br., ECF No. 7-10, PageID.683.)   The court of appeals concluded that counsel was not ineffective for failing to object as suggested by Petitioner because such objections would have been meritless and futile.

The court of appeals' determinations find ample support in the record.  It would have been futile to object, on jurisdictional grounds, to the prosecutor's attempt to bring misdemeanor charges in a felony case (Issue 1 above), because the jurisdictional argument is meritless.  *See* VII. A. *supra.*  It would have been futile to object to the "bad man character evidence" (evidence regarding Petitioner's prior breaking of Ms. Ross' windows, evidence regarding the text threats to shoot up the house or break windows, or evidence regarding the stray bullet) (Issues 2 and 7 above) because counsel had already voiced his objections to such evidence during pretrial proceedings and the trial court had ruled against Petitioner.  It would have been futile to object to the prosecution's reference to Ms. Ross' statements to police in closing argument on grounds of hearsay (Issue 4 above) because the evidence had been admitted.   "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008).  Any objection to the prosecutor's argument would have been futile.

Petitioner's other challenges to the prosecutor's closing argument would have fared no better. Petitioner contends the prosecutor improperly vouched for the credibility of Mr. Morgan (Issue 3 above) when he argued: "Now, if you compare that, [Ms. Ross'] motive to lie, with Mr. Morgan, who, essentially, had no motive to lie, never met the guy before, just out talking with a friend, hasn't seen him since, has no windows broken, never had a relationship with him, he's got no motive to lie, and his testimony was consistent" (Trial Tr. II, ECF No. 7-5, PageID.469.)

The Sixth Circuit has generally recognized two types of objectionable vouching. *See Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, 668 F.3d 307, 328-29 (6th Cir. 2012) (treating the two aspects of vouching as part of a single standard).[5] The first type impermissibly places the government's prestige behind the witness to bolster the witness' credibility. *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992). In the second type of impermissible vouching, also known as bolstering, the prosecutor

---

[5]Notwithstanding the Sixth Circuit's continuing application of its own precedent on vouching, *see Wogenstahl*, 668 F.3d at 328 29 (citing *Johnson v. Bell*, 525 F.2d 466, 482 (6th Cir. 2008)), the Supreme Court has not directly held that vouching amounts to prosecutorial misconduct. Given the Supreme Court's recent admonitions to the courts regarding the limits of clearly established general principles, it is doubtful that vouching has been clearly established by the Supreme Court as a due process violation. *See, e.g., Lopez v, Smith*, 135 S. Ct. 1, 3 (2014) (holding, with respect to a claim of self-representation, that "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.'") (quoting *Marshal v. Rodgers*, 133 S. Ct. 1446, 1450 (2013); *White v. Woodall,* 134 S. Ct. 1697, 1703 (2014) (same, respecting a claim regarding the privilege against self-incrimination); *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) ("The highly generalized standard for evaluating claims of prosecutorial misconduct set forth in *Darden* bears scant resemblance to the elaborate, multistep test employed by the Sixth Circuit here.").

invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the defendant's guilt. *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965); *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).

The court of appeals concluded that the argument regarding Mr. Morgan's credibility was proper: "[A] prosecutor may argue from the facts that a witness is credible. The prosecutor did not improperly imply that his office had some special knowledge about the witness's credibility." (Mich. Ct. App. Op., ECF No. 7-8, PageID.540) (citations omitted). That resolution is consistent with clearly established federal law. Moreover, the factual determinations are well-supported by the record. The prosecutor's argument invites the jurors to look to the evidence, specifically to contrast the relationship each principal witness had with Petitioner, in assessing the credibility of that witness. Prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

For the same reason, there is no impropriety in the prosecutor's argument that Ms. Ross was not being truthful when she denied seeing the gun (Issue 5 above) but that she was being truthful when she first told police Petitioner had pointed the gun at her. The prosecutor did nothing more than comment on the evidence:

> So, how do we find the truth out of that? And I think the answer in finding the truth out of that – where she lied, where she didn't – is to look at what her motivation was when she testified. Look at her motivation. And I think, from where I sat, from where the evidence led, that her motivation comes down to she still kind of has some feelings for the defendant, right?

(Trial Tr. II, ECF No. 7-5, PageID.468.)   That was the conclusion of the Michigan

Court of Appeals:

> Defendant makes the related argument that the prosecutor improperly
> stated that Ross lied when she testified at trial that she did not see a
> gun on defendant.  However, the context makes clear that the prosecutor
> was appealing to the evidence, and to Ross's motivation to protect
> defendant, in making the challenged statement.  "A prosecutor may ...
> argue from the facts that a witness is credible or that the defendant or
> another witness is not worthy of belief." *Id.*

(Mich. Ct. App. Op., ECF No. 7-8, PageID.)  That conclusion was entirely consistent

with clearly established federal law and eminently reasonable on this record.

Finally, Petitioner argues that the prosecutor acted improperly when he

characterized Petitioner's text message[6] as an admission because the text message

did not satisfy the Black's Law Dictionary definition of confession or admission.

(Appellant's Standard 4 Br., ECF No. 7-11, PageID.695.)  The Michigan Court of

Appeals rejected Petitioner's argument:

> Defendant takes issue with the following argument by the prosecutor:

> > I've got one more—one more reason why I believe we've
> > established that Malicious Destruction of Property, those
> > charges.

> > And that's, text message number two; March 16th at 8:42 p.m.,
> > hours after he broke that front window and the kitchen window,
> > what is he texting?  She ain't gonna have no room or car window.
> > Meaning, he did it before; he broke two windows; he may just
> > come back and do it again.  Taunting her that he did it, got away
> > with it, and he'll continue to do it.  Again, I consider that, and I

---

[6] The text message at issue, as sent by Petitioner to Ms. Ross after her windows had been broken, stated: "You're not going to have any room or car windows."  (Trial Tr. I, ECF No. 7-4, PageID.318-319.)  Ms. Ross took the message to mean "[t]hat [Petitioner] was gonna come back and break out all the rest of 'em, my car windows and some more windows." (*Id.*, PageID.319.)

> hope you consider that to be an admission of breaking those windows.
>
> So, even though we don't have an eyewitness who actually saw him throw those bricks, given the context that we have and his admissions and his past actions, I don't believe there's any other inference you can draw but that he was the one who threw those bricks.

Defendant contends that there were no "admissions" and that the prosecutor's statements were improper. Once again, we find no misconduct, because the prosecutor was arguing reasonable inferences from the evidence. *People v. Unger*, 278 Mich.App 210, 236; 749 NW2d 272 (2008).

(Mich. Ct. App. Op., ECF No. 7-8, PageID.541.) The record supports the court of appeals determination that the prosecutor was inviting the jurors to infer from Petitioner's text that he had broken the windows in Ms. Ross' house. Prosecutors are permitted to argue such inferences. *Byrd*, 209 F.3d at 539.

Because none of prosecutorial conduct challenged by Petitioner is even misconduct, it would have been futile for Petitioner's counsel to object. It is not ineffective assistance for counsel to fail to make a futile objection.

> D.     Counsel failed to object to evidence regarding the gunshot and a prior incident of domestic violence.

Petitioner complains that counsel failed to object to evidence regarding: (1) the gunshot into Ms. Ross' home that day after the assaults; and (2) a prior incident of domestic violence perpetrated by Petitioner against Ms. Ross. (Appellant's Standard 4 Br., ECF No. 7-10, PageID.684.) The admissibility of both categories of evidence, however, was argued and decided before the trial at a hearing on July 6, 2012. Petitioner's counsel opposed admission of both categories of evidence.

With respect to the gunshot evidence, the trial court concluded the evidence could come in because "it does establish a logical chain from which the jury could infer that defendant had a gun and used it and it connects him with a gun that corroborates the testimony of Mr. Morgan and, I would assume, Miss Ross, that he had a gun at the time he was—that the assault occurred." (July 6, 2012, Hr'g Tr., ECF No. 7-3, PageID.168-169.) The trial judge indicated that, at trial, he would "not entertain an objection to—to relevance because [he was] finding that such evidence is relevant if properly presented." (*Id.*, PageID.169.) For counsel to raise an objection that the evidence was not relevant, as Petitioner claims counsel should have done, would have been futile. Moreover, the court of appeals confirmed that the evidence was properly admitted. Thus the objection would have been meritless as well. (Mich. Ct. App. Op., ECF No. 7-3, PageID.536-537, 544 n.8.)

With respect to the domestic violence evidence,[7] the trial court ruled the evidence was admissible under MICH. COMP. L. § 768.27b, which declares admissible prior acts of domestic violence when a defendant is accused of domestic violence, and MICH. R. EVID. 404(b), which permits evidence of other bad acts to prove "motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident . . . ." (July 6, 2012, Hr'g Tr., ECF No. 7-3, PageID.172.) For counsel to raise an objection that the evidence was not admissible under Rule 404(b) would have been futile. Moreover, the court of appeals confirmed

---

[7] The prior incident of domestic violence occurred on July 4, 2010. On that date, Petitioner threw a car jack through the window of Ms. Ross' home.

that the evidence was admissible. (Mich. Ct. App. Op., ECF No. 7-8, PageID.543-544.) Thus the objection would have been meritless as well.

E.    Counsel failed to move to recuse the judge for partiality.

For the reasons set forth in § VI. *supra,* a motion to recuse the judge for bias would have been futile and meritless.

F.    Counsel failed to investigate the possibility of a relationship between Ms. Ross and Mr. Morgan that might permit impeachment of their testimony.

Petitioner constructs an elaborate scenario where Ms. Ross and Mr. Morgan were intimate, Mr. Morgan planned to move Ms. Ross and her daughters to Indiana, and Mr. Morgan and Ms. Ross, for various nefarious reasons, were motivated to lie to get Petitioner out of the way. Petitioner contends that counsel's failure to investigate the relationship between Ross and Morgan constitutes ineffective assistance.

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

*Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for

failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim). In his habeas petition and supporting materials, Petitioner has failed to present any evidence regarding the nature of the investigation actually conducted by counsel or what further investigation might have revealed or what additional witnesses might have said. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting

*Strickland*, 466 U.S. at 689). Absent evidence of what the investigation would have revealed or what additional witnesses might have said, "Strickland's deferential standard and AEDPA's doubly deferential standard require a finding that counsel's performance was not deficient." *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016); *see also Carter v. Mitchell*, 443 F.3d 517, 531 (6th Cir. 2006) (petitioner "provided no basis for a finding that trial counsel's investigation was unreasonable" where he did not introduce "any statement from trial counsel describing what [counsel] did or did not do in investigating [the petitioner's] background"); *Beuke v. Houk*, 537 F.3d 618, 644 (6th Cir. 2008) (rejecting ineffective-assistance claim on habeas review where petitioner "ask[ed] this court to assume," based on "sheer speculation," that his trial counsel did not perform an adequate mitigation investigation and where petitioner failed to provide "enough evidence to confirm or deny that conclusion").

The Michigan Court of Appeals concluded Petitioner's failure to provide any evidence in support of his argument was fatal to the claim:

> Defendant contends that defense counsel "failed to properly investigate the extra-judicial circumstances of an intimate relationship existing between Tracy Ross and Jessie Morgan in order to impeach Ross and Morgan with their motives. . . ." However, defendant offers no supporting documentation that Ross and Morgan had an "intimate relationship" and therefore has failed to meet his burden of demonstrating ineffective assistance of counsel.

(Mich. Ct. App. Op., ECF No. 7-8, PageID.545.) That determination is neither contrary to, nor an unreasonable application of, clearly established federal law. Moreover, the factual determinations upon which the state court's analysis relies are

reasonable. The record offers no support for Petitioner's scenario. Indeed, both Ms. Ross and Mr. Morgan denied that they were anything but friends. (Trial Tr. I, ECF No. 7-4, PageID.284, 339, 351-352.) Petitioner has failed to establish that counsel's failure to further investigate their relationship rose to the level of constitutionally ineffective assistance.

> G.     Counsel failed to object to the pretrial hearing on the admissibility of evidence of the prior act of domestic violence on jurisdictional grounds and failed to object that the prior act of domestic violence was dissimilar to the charged crime of assault with a dangerous weapon.

For the reasons set forth in § VII. A. and D., *supra*, the objections Petitioner contends his counsel should have made would have been futile and meritless.

> H.     Counsel failed to object to the testimony of officers Althouse and Alsup regarding the ballistics report prepared by Michigan State Police analyst Michael Burritt.

Even if counsel's failure to object the ballistics report (Lab Report, ECF No. 1-1, PageID.25.) was objectively unreasonable under *Strickland's* first step, he cannot establish prejudice under the second step. The Michigan Court of Appeals relied on the absence of prejudice to reject Petitioner's claim:

> Defendant argues that his attorney should have objected to testimony about the laboratory reports. As discussed earlier, even if error occurred with respect to these reports, it was not outcome-determinative and thus cannot serve as the basis for a successful ineffective-assistance claim. *Toma*, 462 Mich. at 302–303.

(Mich. Ct. App. Op., ECF No. 7-8, PageID.545.) For the reasons set forth in § V, *supra*, the state court's determination is consistent with clearly established federal law and reasonable on this record. The determination that any error was harmless

under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976) materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*); *see also Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*]."

I. Counsel failed to object to Officer Alsup's testimony interpreting the lab report regarding the cocaine.

For the reasons set forth in § VII. H., *supra*, Petitioner cannot establish prejudice.

J. Counsel elicited testimony regarding the cocaine found in the backyard of the home behind Ms. Ross' home.

Although Petitioner describes counsel's approach to the cocaine evidence as inexplicable (Appellant's Standard 4 Br., ECF No. 7-11, PageID.691), the Michigan Court of Appeals had little problem explaining it:

Finally, defendant argues that defense counsel erred by introducing the cocaine evidence. However, it is plausible that counsel wanted to plant an idea in the jurors' minds that the gunshot may have resulted from an unrelated drug deal. We will not second-guess counsel on matters of trial strategy. *People v. Rice (On Remand)*, 235 Mich.App 429, 445; 597 NW2d 843 (1999). At any rate, the cocaine was not tied to defendant

> during the trial and therefore any error in the admission of this evidence
> was not outcome-determinative. *Toma*, 462 Mich. at 302–303.

(Mich. Ct. App. Op., ECF No. 7-8, PageID.545.)  The court of appeals supposition regarding the plausible explanation for counsel's approach is amply supported by the record.  After Officer Alsup testified, while the jury was out of the courtroom, the court and counsel recounted arguments that had been offered in chambers regarding the cocaine evidence.  (Trial Tr. II, ECF No. 7-5, PageID.445-450.)  That exchange reveals that Petitioner's counsel elicited testimony regarding the cocaine to create doubt in the jury's mind as to whether Petitioner was the source of the gunshot by casting the neighborhood as the location of drug deals and, consequently, gun violence.  (*Id.*, PageID.448.)  To counter that suggestion, the prosecutor sought to introduce evidence that Petitioner had been previously convicted for dealing drugs.  (*Id.*, PageID.446-448)  The court sustained Petitioner's counsel's objection to that evidence under MICH. R. EVID. 403 (more prejudicial than probative).  (*Id.*, PageID.449-450.)  The court also precluded Petitioner's counsel from arguing that the gunshot came from some unknown drug dealer, but permitted counsel to argue that drug deals and gunshots were something that happened in that neighborhood.  (*Id.*)

On the record before the Court, the state court's determination, that counsel's introduction of evidence regarding the cocaine was a matter of trial strategy, is patently reasonable.  The court's further conclusion that such strategic decisions should not be second-guessed as ineffective assistance simply because the defendant did not prevail is entirely consistent with clearly established federal law.

Accordingly, Petitioner is not entitled to habeas relief based on his claims of ineffective assistance of counsel.

## Certificate of Appealability

Even though I have concluded that Petitioner's habeas petition should be denied, under 28 U.S.C. § 2253(c)(2), the Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's denial of Petitioner's claims would be debatable or wrong.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.


Date: September 5, 2017          /s/ Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen (14) days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).